**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY | : | |
| Plaintiff | : | CIVIL ACTION NO.:   3:19-CV-1973 |
| | : | |
| VS. | : | |
| | : | |
| SELECTIVE SERVICE, LLC; | : | |
| JOEL MROSEK; | : | |
| JAY PELLETIER; | : | |
| CORNERSTONE ASSETS, LLC; AND | : | |
| STATE OF CONNECTICUT SECOND | : | |
| INJURY FUND | : | |
| Defendants | : | DECEMBER 16, 2019 |

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff, Nautilus Insurance Company ("Nautilus"), as its Complaint for Declaratory

Relief against the Defendants, Selective Service, LLC, Joel Mrosek, Jay Pelletier, Cornerstone

Assets, LLC and the State of Connecticut Second Injury Fund (hereafter, "State of Connecticut"

or "Second Injury Fund"), alleges as follows:

**Nature of this Action**

1.      This is a Complaint for declaratory relief pursuant to 28 U.S.C. § 2201, *et seq.*

2.      Nautilus seeks a declaration that neither defense nor indemnity coverage exists

under two Nautilus insurance policies issued to Named Insured Selective Service, LLC

("Selective Service") as to claims asserted against Selective Service, Joel Mrosek ("Mrosek")

and/or Cornerstone Assets, LLC ("Cornerstone Assets") in an underlying action instituted by Jay

Pelletier ("Pelletier") arising out of injuries he sustained while working on a roofing project.

3.      More specifically, Nautilus seeks a declaration that there is no defense or

indemnity coverage under the Nautilus policies in relation to Mr. Pelletier's and the Second

Injury Fund's claims asserted in the underlying action, Jay Pelletier v. Joel Mrosek, et al.,

1

bearing Docket Number HHD-CV18-6101052-S, pending in the Judicial District of Hartford in the Connecticut Superior Court.

## Jurisdiction and Venue

4.      Plaintiff Nautilus is a corporation that is domiciled and maintains a principal place of business in the State of Arizona.

5.      Upon information and belief, Defendant Pelletier is a citizen of Connecticut.

6.      Upon information and belief, Defendant Selective Service is a Connecticut limited liability company with a principal place of business in Connecticut.

7.      Upon information and belief, Defendant Mrosek is a citizen of Connecticut.

8.      Upon information and belief, Defendant Cornerstone Assets is a Connecticut limited liability company with a principal place of business in Connecticut.

9.      Defendant State of Connecticut is a sovereign state located within the United States of America and subject to its own laws as well as Federal law.

10.     The amount in controversy exceeds $75,000.00 exclusive of costs and interest.

11.     Jurisdiction in this Court is therefore proper under 28 U.S.C. § 1332(a)(1) in that there is diversity of citizenship and the amount in controversy exceeds $75,000.00.

12.     Venue is proper in this Court under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## Factual Background

13.     Nautilus issued a commercial general liability insurance policy bearing Policy No. NN682094 to Selective Service, LLC as the Named Insured, for the policy period April 24, 2016 to April 24, 2017 (the "Nautilus Primary Policy").

14.     Nautilus issued an excess insurance policy bearing Policy No. AN027512 to Selective Service, LLC as the Named Insured, for the policy period April 24, 2016 to April 24, 2017 (the "Nautilus Excess Policy").

15.     On September 13, 2018, Pelletier initiated an action in Connecticut Superior Court against Selective Service, Mrosek, and Cornerstone Assets asserting claims for premises liability and negligence (the "Pelletier Action").

16.     Specifically, Pelletier alleges in his complaint that Defendants Selective Service, Mrosek, and Cornerstone Assets owned, controlled, possessed, managed and/or maintained premises where Pelletier was injured in the course of his work on a roofing project and that those three Defendants' negligence caused his injuries (the "subject accident"). The operative Pelletier Action Complaint is attached hereto as **Exhibit A**.

17.     The State of Connecticut Workers' Compensation Second Injury Fund was granted intervenor status in the Pelletier Action and, in its initial Intervening Complaint in the Pelletier Action, alleged that it had or may become obligated to pay workers' compensation benefits to Pelletier, as his alleged employer, William P. Chabot, LLC, did not carry workers' compensation insurance. The Second Injury Fund sought to recover from Selective Service, Mrosek, and/or Cornerstone Assets workers' compensation benefits paid to Pelletier as a result of the subject accident.

18.     On August 21, 2019, the Second Injury Fund filed a Revised Amended Intervening Complaint in the Pelletier Action, which is the currently operative intervening complaint in that case. In the Revised Amended Intervening Complaint, the Second Injury Fund asserts two counts against Mrosek for negligent selection and supervision of a contractor, respectively, claims for premises liability against both Selective Service and Cornerstone Assets,

and against all three defendants, claims for "money damages" and indemnification for workers'

compensation benefits paid to Pelletier as a result of the subject accident.  The Revised Amended

Intervening Complaint is attached hereto as **Exhibit B**.

19.     Nautilus currently is defending Mrosek and Selective Service as to the Pelletier

Action claims and the Revised Amended Intervening Complaint claims pursuant to a full and

complete reservation of rights.

**Count One – No Duty To Defend Selective Service**
**Employee Injury Endorsement Exclusion**

20.     Paragraphs 1-19, above, are incorporated by reference as if fully stated herein.

21.     The Nautilus Primary Policy contains the following endorsement exclusion for

"*Injury To Employees, Contractors, Volunteers And Other Workers*" (L205 (11/10)) (the

"Employee Injury exclusion"), which provides, in relevant part:

This insurance does not apply to:

e.     **Injury to Employees, Contractors, Volunteers and Other Workers**

"Bodily injury" to:

(1)     "Employees", "leased workers," "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors or independent contractors of any insured; or

(2)      Any insured's contractors', subcontractors' or independent contractors' "employees", "leased workers," "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors or independent contractors.

arising out of and in the course of:

(a) Employment by any insured; or
(b) Directly or indirectly performing duties related to the conduct of any insured's business . . .

This exclusion applies:

4

(1)     Regardless of where the:
    (a)     Services are performed; or
    (b)     "Bodily Injury" occurs; and

(2)     Whether any insured may be liable as an employer or in any other capacity; and

(3)     To any obligation to share damages with or repay someone else who must pay damages because of the injury.

22.     In the Pelletier Complaint, Pelletier alleges that he was injured "while working to erect a roof" as a "business invitee" at the subject premises allegedly owned, controlled, possessed, managed, or maintained by Selective Service.

23.     In the Revised Amended Intervening Complaint, the State of Connecticut alleges that Pelletier was injured "while working to erect a roof" as a "business invitee" at premises Selective Service, acting by and through Mrosek, allegedly owned, controlled, possessed, managed, or maintained.

24.     Other pleadings and discovery in the Pelletier Action establish that Pelletier was working in the course of his employment with, or as an independent contractor to, William P. Chabot, LLC at the time of the subject incident; that Selective Service, through Mrosek, engaged William P. Chabot, LLC to perform the roofing work at the subject premises; and that therefore, at the time of the subject accident, Pelletier was acting in the course of his employment as an "employee" of or independent contractor to Selective Service's contractor, subcontractor, or independent contractor.

25.     Accordingly, the Nautilus Primary Policy's Employee Injury exclusion applies to bar defense coverage for Selective Service as to the Pelletier Complaint and Revised Amended Intervening Complaint claims against it and Nautilus is entitled to a declaration that it is not obligated to defend Selective Service under the Nautilus Primary Policy as to any of those claims.

### Count Two – No Duty To Indemnify Selective Service
### Employee Injury Endorsement Exclusion

26.     Paragraphs 1-25 are incorporated by reference as if fully stated herein.

27.     Accordingly, the Nautilus Primary Policy's Employee Injury exclusion applies to

bar indemnity coverage for Selective Service as to the Pelletier Complaint and Revised Amended

Intervening Complaint claims against it and Nautilus is entitled to a declaration that it is not

obligated to indemnify Selective Service under the Nautilus Primary Policy as to any of those

claims.

### Count Three – No Duty To Defend Mrosek
### Employee Injury Endorsement Exclusion

28.     Paragraphs 1-27 are incorporated by reference as if fully stated herein.

29.     Accordingly, the Nautilus Primary Policy's Employee Injury exclusion applies to

bar defense coverage for Mrosek as to the Pelletier Complaint and Revised Amended Intervening

Complaint claims against him and Nautilus is entitled to a declaration that it is not obligated to

defend Mrosek under the Nautilus Primary Policy as to any of those claims.

### Count Four – No Duty To Indemnify Mrosek
### Employee Injury Endorsement Exclusion

30.     Paragraphs 1-29 are incorporated by reference as if fully stated herein.

31.     Accordingly, the Nautilus Primary Policy's Employee Injury exclusion applies to

bar indemnity coverage for Mrosek as to the Pelletier Complaint and Revised Amended

Intervening Complaint claims against him and Nautilus is entitled to a declaration that it is not

obligated to indemnify Mrosek under the Nautilus Primary Policy as to any of those claims.

**Count Five – No Duty To Defend Selective Service In Connection With
Revised Amended Intervening Complaint: Workers' Compensation And Similar Laws
Exclusion**

32.     Paragraphs 1-31 are incorporated by reference as if fully stated herein.

33.     The Nautilus Primary Policy contains a Workers' Compensation and Similar

Laws exclusion that provides, in relevant part:

**Section I
Coverage A Bodily Injury And Property Damage Liability**
\*\*\*

**2. Exclusions**

This insurance does not apply to:
\*\*\*

**d.  Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or
unemployment compensation law or any similar law.

\*\*\*

34.     In Counts One and Two of the Revised Amended Intervening Complaint, directed

at Mrosek, the State of Connecticut alleges that Mrosek exercised exclusive control over the

subject premises and made all final and binding decisions on how the subject premises was used

and the selection of contractors who were to work on the premises; that Mrosek's decision to hire

Chabot, LLC and its supervision of him were both negligent; and that his negligence was a

substantial contributing factor of Pelletier's injuries.

35.     Counts Three and Count Four of the Revised Amended Intervening Complaint,

directed at Selective Service and Cornerstone Assets, respectively, are nearly identical to those

counts alleged against Selective Service and Cornerstone Assets in the Pelletier Complaint and

include additional allegations that Selective Service and Cornerstone Assets owned, controlled,

possessed managed and/or maintained the subject premises and the construction at the premises "acting by and through Mrosek."

36.     In the Revised Amended Intervening Complaint, the State of Connecticut seeks damages from Selective Service, on a premises liability theory and pursuant to Connecticut's Workers' Compensation Laws, for workers' compensation benefits paid to Pelletier as a result of the subject accident.

37.     The Nautilus Primary Policy's Workers' Compensation and Similar Laws exclusion bars defense coverage for the claims asserted against Selective Service in the Revised Amended Intervening Complaint because such claims are based upon the Connecticut Workers' Compensation Act or similar laws.

38.     Accordingly, Nautilus is entitled to a declaration that it is not obligated to defend Selective Service under the Nautilus Primary Policy as to the claims asserted against it in the Revised Amended Intervening Complaint.

## Count Six – No Duty To Indemnify Selective Service In Connection With Revised Amended Intervening Complaint: Workers' Compensation And Similar Laws Exclusion

39.     Paragraphs 1-38 are incorporated by reference as if fully stated herein.

40.     The Nautilus Primary Policy's Workers' Compensation and Similar Laws exclusion bars indemnity coverage for the claims asserted against Selective Service in the Revised Amended Intervening Complaint because such claims are based upon the Connecticut Workers' Compensation Act or similar laws.

41.     Accordingly, Nautilus is entitled to a declaration that it is not obligated to indemnify Selective Service under the Nautilus Primary Policy as to the claims asserted against it in the Revised Amended Intervening Complaint.

**Count Seven – No Duty To Defend Mrosek In Connection With
Revised Amended Intervening Complaint: Workers' Compensation And Similar Laws
Exclusion**

42.    Paragraphs 1-41 are incorporated by reference as if fully stated herein.

43.    The Nautilus Primary Policy's Workers' Compensation and Similar Laws

exclusion bars defense coverage for the claims asserted against Mrosek in the Revised Amended

Intervening Complaint because such claims are based upon the Connecticut Workers'

Compensation Act or similar laws.

44.    Accordingly, Nautilus is entitled to a declaration that it is not obligated to defend

Mrosek under the Nautilus Primary Policy as to the claims asserted against him in the Revised

Amended Intervening Complaint.

**Count Eight – No Duty To Indemnify Mrosek In Connection With
Revised Amended Intervening Complaint: Workers' Compensation And Similar Laws
Exclusion**

45.    Paragraphs 1-44 are incorporated by reference as if fully stated herein.

46.    The Nautilus Primary Policy's Workers' Compensation and Similar Laws

exclusion bars indemnity coverage for the claims asserted against Mrosek in the Revised

Amended Intervening Complaint because such claims are based upon the Connecticut Workers'

Compensation Act or similar laws.

47.    Accordingly, Nautilus is entitled to a declaration that it is not obligated to

indemnify Mrosek under the Nautilus Primary Policy as to the claims asserted against him in the

Revised Amended Intervening Complaint.

**Count Nine – No Duty To Defend Or Indemnify Mrosek In Connection With
Pelletier Complaint And Revised Amended Intervening Complaint:
No "Insured" Status Under Nautilus' Policies**

48.    Paragraphs 1-47 are incorporated by reference as if fully stated herein.

49.     The Nautilus Primary Policy only affords coverage to "insureds," defined to include any person or organization qualifying as an insured in the applicable Who Is An Insured provisions of the Nautilus Primary Policy.

50.     The Nautilus Primary Policy lists Selective Service, LLC as the Named Insured on the Policy's Declarations Page and further states in Section II – WHO IS AN INSURED that if the Named Insured is a limited liability company:

\*\*\*

a.     . . . you[1] are an insured.  Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

\*\*\*

51.     Mrosek does not qualify as an insured under the Nautilus Primary Policy in connection with the Revised Amended Intervening Complaint claims against him individually (Counts One and Two) because in those claims, Mrosek is not alleged to have been acting in his official capacity as a member or manager of Selective Service in hiring and/or supervising Chabot, LLC.

52.     Mrosek also does not qualify as an insured under the Nautilus Primary Policy in connection with the Pelletier Complaint claims against him individually (Count One) because in that Count, Mrosek is not alleged to have been acting in his official capacity as a member or manager of Selective Service in connection with the negligent acts and/or omissions alleged to have caused the subject accident and Pelletier's related injuries.

---

[1]The Primary Policy's Insuring Agreement states that the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.

53.     Accordingly, Nautilus is entitled to a declaration that it is not obligated to defend or indemnify Mrosek as to Count One of the Pelletier Complaint and as to Counts One and Two of the Revised Amended Intervening Complaint.

### Count Ten – No Duty To Defend Or Indemnify Cornerstone Assets In Connection With Pelletier Complaint And Revised Amended Intervening Complaint: No Insured Status Under Nautilus' Policies

54.     Paragraphs 1-53 are incorporated by reference as if fully stated herein.

55.     Cornerstone Assets does not qualify as an insured under the Nautilus Primary Policy because it is not a member or manager of Selective Service, nor is it alleged in either the Pelletier Complaint or the Revised Amended Intervening Complaint to have acted in such capacity.

56.     Accordingly, Nautilus is entitled to a declaration that it is not obligated to defend or indemnify Cornerstone Assets as to the claims asserted against it in the Pelletier Complaint and/or in the Revised Amended Intervening Complaint because it does not qualify as an "insured" under the Nautilus Primary Policy.

### Count Eleven – No Coverage Under The Primary Policy's Medical Payments Provisions

57.     Paragraphs 1-56 are incorporated by reference as if fully stated herein.

58.     The Nautilus Primary Policy contains limited medical payments coverage for bodily injury claims under specified conditions outlined in Coverage C of the Policy, which provides, in pertinent part:

**COVERAGE C MEDICAL PAYMENTS**

1. **Insuring Agreement**

    a.   We will pay medical expenses as described below for "bodily injury" caused by an accident:

11

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent . . .

***

**2. Exclusions**

We will not pay expenses for "bodily injury": . . .

**b. Hired Person**
To a person hired to do work for or on behalf of any insured or a tenant of any insured.

***

**d. Workers Compensation And Similar Laws**
To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

***

**g. Coverage A Exclusions**
Excluded under Coverage **A**.

***

59.     Pelletier's claims do not trigger coverage under Coverage C because his injuries did not occur on a premises owned by Selective Service.

60.     Even if Pelletier's claims triggered coverage under Coverage C, which Nautilus denies, they would be excluded from Coverage C because, as outlined in the prior Counts, various Coverage A exclusions apply to bar coverage for Pelletier's claims including, but not limited, the Coverage A exclusion for obligations under Workers' Compensation and Similar Laws and the Employee Injury exclusion.

61. Accordingly, Nautilus is entitled to a declaration that it is not obligated pay medical expenses under the Nautilus Primary Policy for Pelletier's' claimed bodily injuries in this action.

**Count Twelve – No Coverage Under The Excess Policy
Because It Follows Form To The Primary Policy**

62.     Paragraphs 1-61 are incorporated by reference as if fully stated herein.

12

63.     The Nautilus Excess Policy's insuring agreement provides that "[i]f any terms, definitions, limits of insurance, conditions or exclusions of this policy are more restrictive than those of the 'controlling underlying insurance', then this policy's conditions or exclusions will apply. However, under no circumstance will this policy provide broader coverage than that provided by the 'underlying insurance.'"

64.     The "underlying insurance" listed in the Nautilus Excess Policy's Schedule is the Nautilus Primary Policy.

65.     As outlined in the prior Counts, various exclusions apply to bar coverage for Pelletier and the Second Injury Fund's claims under the Nautilus Primary Policy, including, but not limited to, exclusions for obligations under Workers' Compensation and Similar Laws and the Employee Injury exclusion.

66.     Because there is no coverage under the Nautilus Primary Policy for Selective Service, Mrosek, or Cornerstone Assets in connection with the Pelletier Action, including for the claims in the Pelletier Complaint or the Revised Amended Intervening Complaint and therefore, there is no coverage under the Excess Policy because it follows form to the Primary Policy.

67.     Accordingly, Nautilus is entitled to a declaration that no coverage is available under the Nautilus Excess Policy for the Pelletier Action and Revised Amended Intervening Complaint claims against Selective Service, Mrosek, or Cornerstone Assets.

### Count Thirteen – No Coverage Under The Excess Policy
### Because The Primary Policy Has Not Been Exhausted

68.     Paragraphs 1-67 are incorporated by reference as if fully stated herein.

69.     The Nautilus Excess Policy's insuring agreement provides that Nautilus "will pay on behalf of the "insured" the "ultimate net loss" in excess of the "underlying insurance limit" because of injury or damage caused by a "loss event" to which this insurance applies provided . .

13

. . [t]he aggregate amount of all limits of "Underlying Insurance", as shown in the Schedule of "Underlying Insurance", has been exhausted by payment of judgments, settlements, costs or expenses; and . . . . [t]he "loss event" occurs or is committed during the policy period."

70.     The "Underlying Insurance" listed in the Nautilus Excess Policy's Schedule is the Nautilus Primary Policy.

71.     As outlined in the prior Counts, there is no coverage under the Nautilus Primary Policy for Selective Service, Mrosek, or Cornerstone Assets in connection with the Pelletier Action, including for the claims in the Pelletier Complaint or the Revised Amended Intervening Complaint and therefore, the Nautilus Primary Policy will not be exhausted.

72.     Accordingly, Nautilus is entitled to a declaration that no coverage is available under the Nautilus Excess Policy for the Pelletier Action and Revised Amended Intervening Complaint claims against Selective Service, Mrosek, or Cornerstone Assets.

WHEREFORE, Nautilus respectfully requests that the Court enter declaratory judgment in its favor as follows:

(a) Declaring that there is no defense or indemnity coverage under either the Nautilus Primary or Excess Policies for Selective Service as to Pelletier and/or the State of Connecticut's claims against Selective Service in the Pelletier Action;

(b) Declaring that there is no defense or indemnity coverage under either the Nautilus Primary or Excess Policies for Mrosek as to Pelletier and/or the State of Connecticut's claims against him in the Pelletier Action;

(c) Declaring that there is no defense or indemnity coverage under either the Nautilus Primary or Excess Policies for Cornerstone Assets as to Pelletier and/or the State of Connecticut's claims against Cornerstone Assets in the Pelletier Action;

14

(d) Awarding such other and further relief as the Court deems just and proper.

Respectfully submitted, this 16th day of December, 2019.

> THE PLAINTIFF,
> NAUTILUS INSURANCE COMPANY
>
>
> BY : */s/ Melicent B. Thompson*
> Melicent B. Thompson, ct19868
> Elizabeth A. O'Donnell, ct30133
> Its Attorneys
> Litchfield Cavo LLP
> 82 Hopmeadow Street, Suite 210
> Simsbury, CT 06089
> Tel : 860-413-2800
> Fax 860-413-2801
> e-mail : thompson@litchfieldcavo.com
> odonnell@litchfieldcavo.com